Christopher J. Eckhart (SBN 331414)
ceckhart@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-637-1777
F: 317-687-2414

Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101
P: 626-795-4700
F: 626-795-4790

Attorneys for Defendant,
ITS LOGISTICS, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH GUTHRIE, individually, on a representative basis, and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> ITS LOGISTICS, LLC, a Delaware Company, and DOES 1 through 20, inclusive; <br><br> Defendants. | Case No.: <br><br><br> **DEFENDANT'S NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that Defendant, ITS Logistics, LLC (ITS Logistics), hereby removes this case from the Superior Court of the State of California for Merced County to the United States District Court for the Eastern District of California. In support of this removal, ITS Logistics states the following:

1.    **The Action**. Plaintiff, Keith Guthrie, filed his Class Action Complaint, captioned *Keith Guthrie, individually, on a representative basis, and on behalf of all others similarly situated, Plaintiff, vs. ITS Logistics, LLC, a Delaware Company, and*

*Does 1 through 20, inclusive, Defendants*, Case No. 21CV-00786 (Complaint), in the Superior Court of the State of California for Merced County on March 9, 2021.

The Complaint asserts claims under California law for (1) failure to pay minimum wages; (2) failure to separately pay for rest and recovery periods under Labor Code § 226.2; (3) failure to provide rest breaks; (4) failure to provide meal periods; (5) failure to reimburse business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wage statements; (8) unfair and unlawful competition; and (9) civil penalties under the California Private Attorneys General Act (PAGA).

Plaintiff served the Complaint on ITS Logistics on April 5, 2021. On May 4, 2021, ITS Logistics filed its Answer and Affirmative Defenses to the Complaint. Copies of all process, pleadings, and orders served upon ITS Logistics or filed in the state court action of which ITS Logistics is aware are attached collectively as **Exhibit A**.[1]

**2.    Statutory Grounds for Removal.** This action is removable under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1453. Section 1441(a) provides for the removal of state court civil actions over which U.S. District Courts have original jurisdiction. As is explained in greater detail below, this Court has original jurisdiction over this case under 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the proposed class includes at least 100 members, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one putative class member is a citizen of a state different from one of the defendants. As such, this action is subject to removal under 28 U.S.C. § 1453, which provides that a class action may be removed to federal court in accordance with 28 U.S.C. § 1446.

---

[1] ITS Logistics filed its Answer and Affirmative Defenses (Answer) to the Complaint in the state court action on May 4, 2021 but is awaiting a conformed copy of that filing. A receipt reflecting confirmation of the electronic filing and service of the Answer is attached as **Exhibit B**. Defendant will supplement the record in this Court once the conformed copy of the Answer is received.

**3.** **Class Action.** This case is a class action within the meaning of 28 U.S.C. §§ 1332(d)(2) and 1453. These statutes provide that a class action is a civil action filed under either Fed. R. Civ. P. 23 or a similar state statute or rule that authorizes one or more representative persons to maintain a class action. *See* 28 U.S.C. § 1332(d)(1)(B). In this case, Plaintiff seeks class certification under California's statute authorizing class actions, California Code of Civil Procedure § 382. Complaint, ¶¶ 26, 31.

**4.** **The Aggregate Number of Proposed Class – 28 U.S.C. §§ 1332(d)(5)(B).** Plaintiff defines his proposed class as "[a]ll current and former truck drivers who resided in California and who were employed by Defendants at any time during the Relevant Time Period. Complaint, ¶ 28. The Relevant Time Period is defined as "four years prior to the filing of this action until class certification." *Id.*, ¶ 27. Therefore, the relevant time period for purposes of this removal is March 9, 2017, through the present. According to its records, ITS Logistics employed at least 354 truck drivers who resided in California during the relevant time period (the Class). The aggregate number of the proposed class therefore contains more than 100 members and exceeds the number required by 28 U.S.C. § 1332(d)(5)(B).

**5.** **Citizenship of the Parties.** Upon information and belief, ITS Logistics alleges that Plaintiff is a citizen of California. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) (holding parties asserting diversity jurisdiction can plead citizenship allegations based on information and belief); Complaint, ¶¶ 28, 30 (asserting "Plaintiff, as Class Representative, is a member of the class that he seeks to represent," which is defined as "current and former truck drivers who resided in California …"); *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (holding removing defendant properly alleged based on information and belief that plaintiff was a California citizen, where plaintiff alleged California residency in complaint), *cert. denied*, 140 S. Ct. 2566 (2020).

ITS Logistics is a Delaware corporation with its principal place of business located in Sparks, Nevada. Thus, ITS Logistics is a citizen of Delaware and Nevada.

*See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…."); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) ("'[P]rincipal place of business' is … the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination.").

Thus, at least one putative class member is a citizen of a different state than at least one defendant, and the minimal diversity requirement of 28 U.S.C. § 1332(d)(2) is met.

**6.    Amount in Controversy – 28 U.S.C. § 1332(d)(2).** Although Defendant denies all of Plaintiff's material allegations, the amount in controversy by virtue of the claims asserted by Plaintiff in the Complaint exceeds the $5,000,000 jurisdictional threshold under 28 U.S.C. § 1332(d).

### a.    Unpaid Minimum Wages

Plaintiff alleges several sources of work for which he and putative class members were not compensated. He alleges that because he and other drivers were (1) paid a "flat-rate compensation for each load (piece-rate per-load pay)" or (2) paid "piece-rate" pay for each mile driven, they were not properly paid separately for non-driving tasks they completed, including "pre-trip and post-trip inspections, detention time, loading and unloading time, completing paperwork, refueling or repair, and downtime between runs." Complaint, ¶¶ 4, 39. Plaintiff additionally alleges that "[d]ue to traffic and other conditions, Defendants' per-load pay often illegally resulted in a rate of pay under the applicable minimum wage." *Id.*, ¶ 40. Plaintiff further alleges that as a result of ITS Logistics' piece-rate pay system, he and other drivers were denied paid rest breaks. *Id.*, ¶ 42.[2]

---

[2] California law requires employers to "authorize and permit" employees to take a ten-minute, paid rest period for every four hours of work. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1039, 273 P.3d 513, 536 (2012).

Plaintiff, a current employee of ITS Logistics, is and has been paid primarily based on a flat daily rate. ITS Logistics also employs over-the-road drivers, who are paid primarily on a mileage-based system with additional compensation for certain enumerated activities on an hourly or flat rate basis. Based on ITS Logistics' records of hire and separation dates, it employed at least 270 drivers who ITS Logistics paid primarily on a flat daily rate or pursuant to its mileage-based system between March 9, 2017 and the present. During that time period, those drivers worked an aggregate total of 10,553 weeks.[3] For purposes of identifying the amount placed in controversy by Plaintiff's minimum wage claim pertaining to allegedly unpaid non-driving tasks completed, ITS Logistics assumes that Plaintiff and putative class members spent an average of 7.25 hours per week performing such tasks, including:

 (1) 15 minutes, five times per week performing pre-trip inspections (total of 75 minutes);

 (2) 15 minutes, five times per week performing post-trip inspections (total of 75 minutes);

 (3) 15 minutes, five times per week completing paperwork (total of 75 minutes);

 (4) 15 minutes, four times per week loading and/or unloading (total of 60 minutes);

 (5) 30 minutes of "detention time" per week (total of 30 minutes);

 (6) 30 minutes fueling, two times per week (total of 60 minutes); and

 (7) 60 minutes of "downtime between runs" per week (total of 60 minutes).

Assuming an average minimum wage over the class period of $10.50 per hour,[4]

---

[3] ITS Logistics also employed California-resident drivers as local drivers, who are paid primarily on an hourly basis. For purposes of determining the amount in controversy under Plaintiff's piece-rate minimum wage theory, Defendant did *not* include any weeks worked by California-resident local drivers who are paid primarily on an hourly basis.

[4] California minimum wage rates in effect during the putative class period (March 9, 2017 to present), weighted by the approximate number of months encompassed by the class period each year, are as follows:

Plaintiff's claim for minimum wages based on allegedly unpaid non-driving tasks places $803,347.13 (7.25 hours x $10.50 per hour x 10,553 weeks) in controversy. Because Plaintiff also seeks liquidated damages under California Labor Code § 1194.2 (*see* Complaint, ¶ 48), which provides for liquidated damages equal to the amount of unpaid minimum wages, the amount in controversy is doubled to **$1,606,694.25**.

To calculate the amount placed in controversy by the portion of Plaintiff's minimum wage claim based on the failure to pay for rest periods, ITS Logistics assumes that Plaintiff and putative class members were paid an average hourly rate of $21.00.[5] Assuming that Plaintiff and putative class members worked eight hours per day and were therefore denied two paid ten-minute rest periods per day, five days per week (for a total of approximately 1.67 hours per week), this portion of Plaintiff's minimum wage claim places an additional $370,093.71 (1.67 hours per week x 10,553 weeks x $21 per hour) in controversy. Accounting for Plaintiff's request for liquidated damages increases that amount to **$740,187.42**. As a result, the total amount placed in controversy by Plaintiff's minimum wage claim based on the alleged failure to separately pay for non-driving tasks *and* rest periods is **$2,346,881.67**.

### b.    Meal Period Claim

Plaintiff alleges that, "[a]t all relevant times herein, Plaintiff [and putative class members] were denied the 30-minute meal periods to which they were entitled." Complaint, ¶ 71. He alleges that accordingly, ITS Logistics "violated Labor Code

| Year | Min. Wage | Months |
|------|-----------|--------|
| 2017 | $10.50 | ~ 9 (March 9, 2017 to December 31, 2017) |
| 2018 | $11.00 | 12 |
| 2019 | $12.00 | 12 |
| 2020 | $13.00 | 12 |
| 2020 | $14.00 | ~ 4 (January 1, 2021 to date of removal) |

The average of these hourly rates is $11.89/hour. However, ITS Logistics has used a more conservative $10.50/hour to determine the amount in controversy on Plaintiff's minimum wage claim.

[5] This was Plaintiff's starting hourly rate when he began his employment in January, 2019. His current hourly rate is $25.38.

DEFENDANT'S NOTICE OF REMOVAL

§§ 226.7, 512, and the applicable IWC Wage Order every pay period with respect to Plaintiff and the [putative class members] because Plaintiff and the [putative class members] were not provided with all mandatory meal periods and Defendants failed to pay Plaintiff and the [putative class members] one additional hour of compensation at the regular rate of pay in lieu thereof." Complaint, ¶ 72.

This allegation pertains to the entire putative class, consisting of at least 354 drivers. Since March 9, 2017, Plaintiff and the entire putative class worked at least 16,005 total weeks. Assuming, for the purposes of this analysis, that they are owed one hour of premium pay at an average hourly rate of $21.00 for three missed meal periods per week (at a violation rate of only approximately 60%), the amount placed in controversy by Plaintiff's claim based on failure to provide meal periods in violation of Labor Code § 226.7 is **$1,008,315.00** ($21 per hour premium pay x 3 missed meal breaks per week x 16,005 total weeks).

**c.    Rest Period Claim**

Plaintiff alleges that, "[a]t all relevant times, Plaintiff and [putative class members] were denied paid rest breaks by virtue of Defendants' policy that only paid its truck drivers for miles driven." Complaint, ¶ 60. He alleges that accordingly, ITS Logistics "violated Labor Code §§ 226.7, 512, and the applicable IWC Wage Order every pay period with respect to Plaintiff and the [putative class members] because Plaintiff and the [putative class members] were not provided with all mandatory rest periods and Defendants failed to pay Plaintiff and the [putative class members] one additional hour of compensation in lieu thereof." Complaint, ¶ 62. As with meal periods, Plaintiff seeks rest period premium pay under Labor Code § 226.7 at one hour of pay at the employee's regular rate for each work day in which a compliant rest period was not provided. *Id.*, ¶ 64. Assuming Plaintiff and each putative class member worked five, eight-hour days per week, and missed one rest period each of those days (a violation rate of 50%), Plaintiff's rest period claim places **$1,680,525.00** ($21 per hour premium pay x 5 missed rest breaks per week x 16,005 total weeks) in controversy.

### d.    Wage Statement Penalties

California Labor Code § 226 requires California employers to provide accurate wage statements to employees containing certain items identified in the statute at the time of each payment of wages. *See* Cal. Lab. Code § 226(a). Labor Code § 226(e), provides for a penalty of $50 for the first violation and $100 for each subsequent violation of these requirements, not to exceed an aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e)(1). The statute of limitations for recovery of penalties under § 226 is one year. *See* Cal. Civ. Proc. Code § 340(a).

Plaintiff alleges that ITS Logistics "violates Labor Code § 226(a) every pay period with respect to Plaintiff and the [putative class members] because the wage statements that Defendants issued to Plaintiff and the [putative class members] failed to provide any information regarding hours worked, and therefore the wage statements did not state 'total hours worked by the employee' in direct violation of Labor Code § 226(a)(2)" and "because the wage statements failed to accurately state gross wages earned, all deductions, net wages earned, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and the corresponding number of hours at each hourly rate by the employee." Complaint, ¶ ¶ 97-98. Throughout the one-year limitation period for the wage statement claim, ITS Logistics paid Plaintiff and putative class members and provided them wage statements on a weekly basis. During that time, 42 drivers worked enough weeks to reach the maximum $4,000 penalty, for a total of $164,000.00, while 65 drivers worked fewer weeks for penalty amounts between $50 and $3,950, for a total of $79,050.00. Altogether Plaintiff's wage statement claim places **$243,050** in controversy ($164,000 + $70,050 = $243,050).

### e.    Waiting Time Penalties

Labor Code § 203 provides for "waiting time" penalties where an employer willfully fails to pay all wages due to a discharged or resigning employee within the deadlines provided for in Labor Code §§ 201 and 202. The penalties take the form of

8

the employee's daily wages for each day the employer fails to pay all wages due, up to a maximum of 30 days. Cal. Lab. Code § 203(a). Labor Code § 203 carries a three-year statute of limitations, mirroring the three-year statute of limitations on unpaid wages. *See* Cal. Lab. Code § 203(b).

Plaintiff alleges that ITS Logistics is liable to class members for waiting time penalties because of the alleged unpaid minimum wages, meal period premiums, and rest period premiums discussed above: "[A]t all relevant times, Defendants engaged in the practice of failing to pay all wages due and owing to Plaintiff and the [putative class members] upon separation of employment, including, but not limited to, minimum and regular wages, as well as meal and rest period premiums." Complaint, ¶ 92.

ITS Logistics' records indicate that at least 301 members of the putative class have resigned or been discharged during the relevant period. As discussed above, the average hourly rate of pay for putative class members assumed for purposes of this analysis is $21.00. Assuming that Plaintiff and putative class members worked an average of eight hours per day, the average daily wages for Plaintiff and the putative class is $168.00. Using this average daily wage, the amount in controversy for waiting time penalties is **$1,517,040.00** (301 separated employees x $168 average daily wage x 30 days).

### f.     Unreimbursed Business Expenses

Plaintiff alleges generally that, "[a]t all relevant times, [ITS Logistics] failed to reimburse the [putative class members], including Plaintiff, for expenses incurred while discharging duties to Defendants, thereby receiving an economic benefit" in violation of Cal. Lab. Code § 2802. Complaint, ¶ 82. The only specific item Plaintiff provides as an "example" of the kinds of expenses incurred for which he seeks reimbursement is money spent to "acquire and maintain a smart phone and related monthly data plan to communicate with Defendants via phone and text message." *Id.*, ¶ 80.

Labor Code Section 2802 requires that "[w]hen employees must use their personal cell phones for work-related calls," their employer must reimburse them for "a

reasonable percentage of their cell phone bills." *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014). According to the U.S. Bureau of Labor Statistics data for the cost of wireless telephone services in the United States from 2017 to the present, the average monthly cost of wireless telephone services in U.S. cities during that time is $47.36. *See* Wireless Telephone Services in U.S. City Average from 2011 to 2021, U.S. BUREAU OF LABOR STATISTICS, https://data.bls.gov/timeseries/CUUR0000SEED03 (last visited May 4, 2021). The average weekly cost of wireless telephone services would therefore be $11.01 per week ($47.36 ÷ 4.3 weeks/month = $11.01). Assuming reimbursement of fifty percent (50%) of the average weekly cost of $11.01 per week as a reasonable percentage of cell phone expenses incurred by Plaintiff and putative class members, Plaintiff's claim for reimbursement of cell phone expenses places **$88,187.55** in controversy (16,005 weeks x $5.51 per week). This figure does not include additional amounts in controversy for the purchase of cell phone devices, or other unreimbursed expenses Plaintiff may claim on behalf of the class, which are alluded to but not specifically enumerated in his Complaint.

### g.   Attorneys' Fees

Plaintiff's claim for attorneys' fees also may be included in the amount in controversy. *See Fritsch v. Swift Transp. Co. of Az., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). In class action cases in California, prevailing plaintiffs have requested, and courts have awarded, attorney fees in the range of 25%-33% of the overall recovery, with 25% as the "benchmark." *See Vasquez v Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491, 492 (E.D. Cal. 2010) (citing to five wage and hour cases where federal court judges approved fee awards that ranged from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *see also Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *7 (N.D. Cal. Oct. 25, 2019) (concluding that a defendant's estimate of attorney's fees using 25% of the putative class recovery reasonable) (*citing Cortez v. United Nat. Foods, Inc.*, 2019 WL 955011, at *7 (N.D. Cal. Feb. 27, 2019) (citing

several wage and hour cases using a 25% benchmark)).

The 25% benchmark for attorneys' fees is a reasonable assumption in this case and places an additional **$1,738,965.42** in controversy. The amount in controversy for each claim and in total can be summarized as follows:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages – Based on Alleged Failure to Pay Nondriving Tasks | $1,606,694.25 |
| Unpaid Minimum Wages – Based on Alleged Failure to Provide Paid Rest Periods | $740,187.42 |
| Meal Period Claim | $1,008,315.00 |
| Rest Period Claim | $1,680,525.00 |
| Wage Statement Penalties | $243,050.00 |
| Waiting Time Penalties | $1,517,040.00 |
| Unreimbursed Expenses | $88,187.55 |
| Subtotal | $6,883,999.22 |
| Attorneys' Fees (25% of Subtotal) | $1,720,999.81 |
| Total | $8,604,999.03 |

The total amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(d) is therefore approximately **$8,604,999.03**. The jurisdictional threshold is met in this case.

**7.** **Timeliness of Removal.** The federal removal statute, 28 U.S.C. § 1446(b), imposes two deadlines on removal. First, if a case "stated by the initial pleading is removable on its face," a defendant must remove within 30 days of service of that

pleading. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); 28 U.S.C. § 1446(b)(1). Second, "if the case stated by the initial pleading is not removable," then the defendant may remove within 30 days after receiving "an amended pleading, motion, or other paper from which it may first be ascertained that the case is … removable." *Id.* § 1446(b)(3). Further, a defendant may remove at any time "outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

The 30-day removal clock was not triggered by service of the Complaint because the Complaint is indeterminate as to the amount in controversy. *Harris*, 425 F.3d at 694; *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013); 28 U.S.C. § 1446(b)(1).  Regardless, this Notice of Removal is timely as it is filed within 30 days of service of the Complaint, which occurred on April 5, 2021. *See* 28 U.S.C. § 1446(b)(1); *Harris*, 425 F.3d at 694.

**8.** **Notice of Removal to Adverse Parties and to State Court Clerk.** Under 28 U.S.C. § 1446(d), ITS Logistics will give written notice of this removal to Plaintiff and to the Clerk of the Superior Court of the State of California for Merced County. Promptly after filing this Notice of Removal, counsel for ITS Logistics will send to Plaintiff and will file with the Clerk of the Superior Court of the State of California for Merced County a Notice of Removal to Adverse Parties and State Court Clerk, a true and correct copy of which is attached as **Exhibit C**.

**9.** <u>**No Waiver.**</u> By filing this Notice of Removal, ITS Logistics does not waive any available defenses to the claims asserted by Plaintiff.

Dated: May 5, 2021                         Respectfully submitted,


                                           */s/ Christopher J. Eckhart*
                                           Christopher J. Eckhart

                                           Attorney for Defendant,
                                           ITS LOGISTICS, LLC

DEFENDANT'S NOTICE OF REMOVAL

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, **Michelle Lazo**, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2 North Lake Avenue, Suite 560, Pasadena, California 91101.

On, May 5, 2021, I served the foregoing document described as **DEFENDANT'S NOTICE OF REMOVAL** on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

> Brian J. Mankin, Esq.
> brian@lmlfirm.com
> Misty M. Lauby, Esq.
> misty@lmlfirm.com
> LAUBY, MANKIN & LAUBY LLP
> 4590 Allstate Drive
> Riverside, CA 92501

√    **(BY MAIL)** I deposited such envelope in the mail at Pasadena, California. The envelope was mailed with postage thereon fully prepaid.

√    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

√    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 5, 2021, at Norwalk, California.

_____
Michelle Lazo

4843-1449-8535, v. 11

14
DEFENDANT'S NOTICE OF REMOVAL