Misty M. Lauby, Esq. [CSB No. 243009]
misty@lmlfirm.com
LAUBY, MANKIN & LAUBY LLP
5198 Arlington Avenue, PMB 513
Riverside, CA  92504
Tel: (951) 320-1444 | Fax: (951) 320-1445

Attorneys for Plaintiff and others similarly situated

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH GUTHRIE, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>        Plaintiff,<br><br>    vs.<br><br>ITS LOGISTICS, LLC, a Delaware Company, and DOES 1 through 20, inclusive;<br><br>        Defendants. | Case No.:  1:21-CV-00729-KES-EPG<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><u>Hearing</u><br>Date:        April 21, 2025<br>Time:        1:30 p.m.<br>Courtroom:  6<br><br>Complaint filed:    March 9, 2021 |

    TO THE COURT AND TO ALL PARTIES AND COUNSEL FO RECORD:

    Plaintiff hereby submits the following supplemental brief pursuant to the Court's May 1, 2025 Amended Order Permitting Supplement in Support of Plaintiff's Motion for Class Certification and Preliminary Approval of Class Action Settlement (ECF No. 85).

1
2
3

**<u>Issue # 1: Plaintiff supports the motion with the declaration of Timothy Aboussleman (Defendants Senior Director of Logistics). However, the declaration is not signed or dated. (ECF No. 79-2).</u>**

4
5
6

Plaintiff inadvertently attached the wrong version of the Declaration of Timothy Aboussleman. The signed and dated version is attached to the concurrently filed Supplemental Declaration of Misty M. Lauby ("Supp. Lauby Decl.") as **Exhibit A**.

7
8
9

**<u>Issue #2: The motion states that the proposed Class Notice is attached as Exhibit 1 to the Settlement Agreement. (ECF No. 79-1, p.6 n.1). However, it is not attached to the settlement agreement.</u>**

10
11

Plaintiff inadvertently failed to attach the class notice to the Settlement Agreement. The class notice is attached to the concurrently filed Supp. Lauby Decl. as **Exhibit B**.

12
13

**<u>Issue #3: The motion lacks specific support for the $7,500 proposed class service award. (ECF No. 79-1, p.48).</u>**

14
15
16
17
18
19

Plaintiff's request for a service award in the amount of $7,500 should be granted. Here, Plaintiff has been instrumental in the prosecution of this matter. He brought the matter at great personal risk to himself on behalf of the class as opposed to as an individual matter where he likely would have been entitled to far more in recovery than what he will see as a result of bringing this case on behalf of all of his fellow Class Members.

20
21
22
23
24
25
26
27
28

Additionally, due to the procedural events in this matter, the Class Period is cut off in June of 2024. Plaintiff separated from his employment with ITS Logistics in November of 2024. As a result, he will not receive any of the Net Settlement Amount that is allocated to the claim for waiting time penalties which has a value of approximately $1,122 for each Class Member that was a former employee as of the end of the Class Period. But to effectuate the settlement on behalf of the class, Plaintiff had to sign a settlement agreement giving the Defendant a full release and 1542 waiver which is far beyond the other Class Members.  Class Members, other than Plaintiff, whose employment with ITS Logistics ended after June of 2024 do not release their claims for

waiting time penalties and are free to bring such claims if they so choose. The same cannot be said for Plaintiff.  Therefore, a service award of $7,500 to Plaintiff, while $2,500 above the standard amount in this District, is well warranted given the amount of time that Plaintiff has devoted to this four-year matter, the risk he has incurred, and his release of claims that goes above and beyond the releases of his fellow Class Members. (*See* Supp. Lauby Decl., ¶ 4-5; *see also* Decl. of Plaintiff Keith Guthrie).

**Issue #4: Some of the claims are calculated from 3/1/19 to "5/31/303". (See ECF No. 79-1, pp 16-17).**

The concurrently filed redline version of the Renewed Motion for Preliminary Approval is corrected to state that the stop pay claims run from 3/1/19 to 5/31/2020.  (See Supp. Lauby Decl., ¶ 6; see also, the Redlined Memorandum of Points and Authorities in Support of Renewed Motion for Preliminary Approval ("Redlined RMPA"), attached to the concurrently filed Supp. Lauby Decl. as **Exhibit C**.)

**Issue #5: There appear to be errors regarding the valuation of the claims. Plaintiff is directed to review all calculations in the motion and correct any figures, values, and percentages that are incorrect. The Court identified a few of the apparent errors at the hearing as follows:**

a. The calculation used to determine the maximum value of stop pay claims for mileage-rate shifts: "Stop Pay (Est. 2 stops per day @ $12.50) per contract [4,125 days $103,800 driven @ mileage rate x est. 2 stops per day x $12.50]." (ECF No. 79-1, p. 36). It appears that Plaintiff is saying that 2 stops per day x $12.50 per stop x 4,125 days = $103,800. However, 2 stops x 12.50 per stop x 4,125 days = $103,125 (or $675 less than $103,800). And if these calculations are correct, there would then be further derivative errors based on these values being used in further calculations. For example, it would mean that the maximum value of the failure-to-pay-wages claims is not $496,655 as Plaintiff asserts but $495,980 (calculated by subtracting $675 (the difference between $103,800 and $103,125) from $496,665).

As shown on line 15 of the Table at ECF No. 79-1, p. 35, the "Total Mileage Rate Days Driven" is 4,152. However, in line 20 of the Table at ECF 79-1, p. 36, Plaintiff inadvertently included a typographical error showing 4,125 instead of the correct number

of 4,152. Therefore, the calculation of 2 x 12.50 x 4,152 = $103,800 is correct.  Since there is no correction to the subtotal for mileage rate stop pay, there is also no correction to the Total Potential Max class Damages re Unpaid Wages. (*See* Supp. Lauby Decl., ¶ 7; *see also,* Redlined RMPA, p. 36).

 b. For the failure-to-timely-pay-wages claims, the calculation for the $2,059,669 value for the flat-rate shifts does not add up. (ECF No. 79-1, p. 40). Specifically, Plaintiff offers a calculation of 203 former flat rate drivers x $337.54 for the average daily flat rate x 30 (presumably 30 days under Labor Code § 203(a)). However, 203 x $337.54 x 30 = $2,055,619, not $2,059,669.

 In further reviewing this inconsistency, it was discovered that a miscalculation occurred as a result of the use of incorrect percentages for Percent of Days Driven at Flat Rate (90% but should have been 86%) and Percent of Days driven at Mileage Rate (10% but should have been 14%) being input into the excel spreadsheet that Plaintiff's counsel was utilizing to calculate totals. *See ECF No. 79-1, p. 40.* The following calculations should now be correct.

| FLAT RATE DRIVERS | |
|---|---|
| % of Days Driven at Flat Rate (25,009 days out of 29,161 per Daily Data) | 86% |
| Former Flat Rate Drivers (226 total drivers x 86% percentage of days driven) | 194 |
| Avg. Flat Rate Per Day | $337.54 |
| Max Value Subtotal for FRD Waiting Time Penalties [$337.54 x 30 x 194] | ***$1,964,483*** |
| **MILEAGE RATE DRIVERS** | |
| % of Days Driven at Mileage Rate | 14% |
| Former Mileage Rate Drivers (226 total drives x 14% percentage of days driven) | 32 |
| Average Per Day Earnings at Mileage Rate | $199.98 |
| Max Value Subtotal for MRD Waiting Time Penalties [$199.98 x 30 x 32] | ***$191,981*** |
| **Total Max Value Waiting Time Claims** | **$2,156,464** |

With these corrections, the corrected Total Max Value Waiting Time Claims is $2,156,464.

(*See* Supp. Lauby Decl.,¶ 8-9; *see also* Redlined RMPA, p. 40-41).

As a result of the above corrections, the following derivative corrections were also made to the risk adjustment analysis as follows:

| FLAT RATE DRIVERS | | | | |
|---|---|---|---|---|
| **Category** | **Max** | **Cert Risk** | **Merits Risk** | **Risk Adj.** |
| Flat Rate Waiting Time | *$1,964,483* | 50% | 58% | **$412,541** |
| MILEAGE RATE DRIVERS | | | | |
| **Category** | **Max** | **Cert Risk** | **Merits Risk** | **Risk Adj.** |
| Mileage Waiting Time | *$191,981* | 43% | 22% | $85,355 |
| **Total Risk-Adjusted Class Damages Re Unpaid Wages** | | | | **$497,896** |

(*See* Supp. Lauby Decl., ¶ 10; *see also* Redlined RMPA, p. 41).

Further, derivative corrections were required as to the Total Risk-Adjusted Penalties and Damages section.  The table set forth below includes the correct line item of $497,896 for Labor Code §§ 201 – 203 Claims and for the Total Risk-Adjusted Penalties and Damages of $845,090.

In sum when factoring in defenses and risks of ongoing litigation, Plaintiff estimates the risk-adjusted class recovery as follows:

- Wages, incl. NPT, Stop Pay, &Rest:           $ 144,808
- Wage Statements:                              $ 117,120
- 2802 Claims:                                  $   85,266
- Labor Code §§ 201 – 203 Claims:               $ 497,896
- **TOTAL RISK-ADJUSTED PENALTIES AND DAMAGES**:  **$ 845,090**

(*See* Supp. Lauby Decl., ¶ 11; *see also* Redlined MPA, p. 41-42).

The following sections at ECF 79-1, pp 43 were also affected by the miscalculation:

"The Gross Settlement amount of $550,000 is approximately 65% of the $841,073 estimate of the class "risk-adjusted recovery" and 18% of the estimated maximum class value of $3,090,570.  (Lauby Decl. ¶ 58).

The Net Settlement Amount of $270,000 is approximately 32% of the $841,073 estimate of the class "risk-adjusted recovery" and 9% of the estimated maximum class value of $3,090,570. (Lauby Decl. ¶ 59)."

This supplemental briefing also corrects those two paragraphs to say instead:

"Gross Settlement amount of $550,000 is approximately 65% of the $845,090 estimate of the class "risk-adjusted recovery" and 18% of the estimated maximum class value of $3,049,379"

The Net Settlement Amount of $270,000 is approximately 32% of the $845,090 estimate of the class "risk-adjusted recovery" and 9% of the estimated maximum class value of $3,049,379."

(*See* Supp. Lauby Decl., ¶ 12; *see also* Redlined RMPA, p. 43).

Additionally, due to the mistake noted above regarding the percentages allocated to the days driven at flat rate vs. mileage rate and the correction of that mistake (90% Flat Rate to 86% Flat Rate and 10% Mileage Rate to 14% Mileage Rate), the allocation chart at ECF 79-1, p. 17 has likewise been corrected to allocate the proper percentages for the settlement shares.

(*See* Supp. Lauby Decl., ¶ 13; *see also* Redlined RMPA, p. 17).

c. For the failure-to-timely-pay-wages claims, the body of the brief states that "Plaintiff calculated the maximum waiting time penalties to be $2,148,623," however, the chart provided lists $2,197,655. (ECF No. 79-1, p. 40).

Both the chart and the body of the brief have been corrected to indicate that the maximum waiting time penalties value is $2,156,464 which has been corrected pursuant to the changes set forth above.

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL
-5-

(*See* Supp. Lauby Decl., ¶ 14; *see also* Redlined RMPA, p. 43).

## **Conclusion**

The Parties respectfully submit that the Settlement is fair, Reasonable and adequate, and merits approval.

Dated: June 6, 2025                          LAUBY MANKIN LAUBY LLP

                                        BY:     *s/ Misty M. Lauby*
                                              Misty M. Lauby, Esq.
                                              Attorneys for Plaintiff
                                              4930-8294-5355, v. 4